UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff/Respondent,

v.                                                                  Criminal Case No. 14-20209
                                                                  Civil Case No. 18-11171

Sarah Ann Calvetti,
                                                                  Sean F. Cox
    Defendant/Petitioner.                         United States District Court Judge

_____/

## **OPINION & ORDER DENYING MOTION UNDER 28 U.S.C. § 2255**

Acting *pro se*, Petitioner Sarah Ann Calvetti filed a habeas petition pursuant to 28 U.S.C. § 2255. Calvetti argues that she is entitled to relief from her convictions and sentences for drug trafficking offenses because she received ineffective assistance of counsel during the pre-trial, trial, and sentencing stages of her proceedings. The motion was fully briefed by the parties. Because the files and records of the case conclusively show that Calvetti is not entitled to relief, an evidentiary hearing is not necessary. For the reasons below, the Court will deny the motion and decline to issue a certificate of appealability.

### **BACKGROUND**[1]

On March 26, 2014, Michigan State Police Trooper Craig Ziecina stopped Calvetti on northbound I-75, after observing her make an illegal lane change and drive under the minimum legal speed. (ECF No. 36 PageID 264-265). Calvetti's co-defendant, Demas Hernandez Cortez, was the

---

[1] The Court takes this factual background from its findings of fact in *United States v. Cortez et. al.*, 2014 WL 4374374 (E.D. Mich.) (denying Calvetti's motion to suppress) (ECF No. 36) and the United States Court of Appeals for the Sixth Circuit's opinion in *United States v. Calvetti*, 836 F.3d 654 (6th Cir. 2016) (ECF No. 99.).

only passenger in the van. After she failed to produce a driver's license, Ziencina asked Calvetti to accompany him to his patrol car so that he could identify her. She complied, and Cortez remained in the van.

In his patrol car, Calvetti told Ziecina that she was in the process of moving to Michigan from Texas, that Cortez was her boyfriend, and that they had been traveling for 24 hours straight. This conversation was recorded by the patrol car's internal recording system.

Ziencina then exited the car to speak with Cortez. As he walked by the van, he noticed that there were very few personal items inside, despite Calvetti's statement that she was moving.

Ziencina returned to the patrol car and questioned Calvetti about the ownership of the van. He noted that the van's paperwork indicated that it was owned by someone else. Calvetti stated that she was in the process of purchasing the van, but had not yet completed the sale.

At this point, Calvetti consented to a search of the van. So far, the stop had lasted fifteen minutes. Ziencina and another trooper conducted a canine-sniff search of the car. The dog did not alert.

Approximately thirty-five minutes into the stop, the troopers moved Cortez into the patrol car with Calvetti while they performed a more detailed search. The car's audio system recorded a conversation between them. They conferred as to whether their independent answers to Ziecina's questions matched and decided that Cortez would "take the blame." Calvetti also talked to a co-conspirator on Cortez's cellphone, alerting the co-conspirator that the van was being searched. Calvetti then erased the co-conspirator's number from the cell phone.

After noticing several discrepancies in the van's structure and receiving help from Cortez, Ziencina discovered sixteen kilograms of cocaine hidden in the van. Calvetti and Cortez were

2

arrested and taken to a United States Drug Enforcement Administration (DEA) field office.

At the DEA office, Calvetti and Cortez were informed of their *Miranda* rights. Cortez executed a written waiver of his *Miranda* rights and answered questions. Calvetti signed a *Miranda* form indicating that she understood her rights but did not want to answer questions. Nonetheless, agents questioned her. Thereafter, Calvetti gave permission for the DEA to use her Michigan residence to stage a controlled delivery. Calvetti also consented to a search of her residence.

After the controlled delivery failed, the DEA and Michigan State Police searched Calvetti's residence, which was nearly empty. The search uncovered drug packing materials, including boxes of clear plastic wrap, dryer sheets, grease, and plastic bags.

On April 8, 2014, a grand jury indicted Calvetti (and Cortez) on two counts: conspiracy to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A)(ii)(II), and possession with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II). (ECF No. 10). Attorney James Gerometta was appointed to represent her.

Before trial, Gerometta filed two suppression motions on Calvetti's behalf. The first motion sought to suppress her statements made to the DEA agents and the fruits of the search of her residence because the agents violated her *Miranda* rights. (ECF No. 20). The second motion sought to suppress the cocaine found in the van because the troopers did not have probable cause to stop the car and had unconstitutionally prolonged the stop without reasonable suspicion of criminal activity. (ECF No. 22). The Court denied both motions. (ECF Nos. 31, 36).

A jury convicted Calvetti on both counts. After trial, Calvetti renewed her second suppression motion based on additional evidence that was admitted at trial. (ECF No. 65). The

Court denied this motion again. (ECF No. 68). At sentencing, Gerometta argued that Calvetti qualified as a minor participant under U.S.S.G. § 3B1.2. The Court rejected this argument and sentenced Calvetti to 121 months, the bottom of her Guidelines Range and one month beyond the 10-year mandatory minimum.

Calvetti appealed to the United States Court of Appeals for the Sixth Circuit, arguing that the Court had erred by denying her suppression motions and that there was insufficient evidence to support her convictions. On September 8, 2016, the Sixth Circuit affirmed Calvetti's convictions in a published opinion. *United States v. Calvetti*, 836 F.3d 654 (6th Cir. 2016) (ECF No. 99).[2]

On April 25, 2017, the United States Supreme Court denied Calvetti's petition for a writ of certiorari.

On April 12, 2018, Calvetti filed this timely § 2255 petition, arguing that she received ineffective assistance of counsel at all stages of the trial court proceedings. Calvetti argues that, before trial, Gerometta failed to adequately communicate with her, failed to conduct an adequate and independent investigation, and did not attempt to negotiate a favorable plea offer. Calvetti also appears to argue that Gerometta ineffectively argued the suppression motions. Calvetti then argues that, at trial, Gerometta failed to submit Ziencina's initial report of the stop and pictures of Calvetti's

---

[2]Notably, the Sixth Circuit found that the Court had "erred in ruling that Calvetti waived her right to remain silent by responding to the improper questioning [after signing her *Miranda* form]," but concluded that no constitutional violation occurred because the statements were not used against her at trial. *Calvetti*, 836 F.3d at 662 ("Because the prosecution did not present any of Calvetti's statements to the DEA agents at trial, and therefore did not use the illegally-obtained evidence against her, Calvetti has not suffered any injury against which the Fifth Amendment protects."). The Sixth Circuit also concluded that "[t]he violation of Calvetti's Fifth Amendment right to remain silent provides no basis for suppressing the evidence found in her [home] arising out of her consent to search" because "a consent to search is not a self-incriminating statement subject to the protection of the Fifth Amendment" *Id*. at 663.

home as exhibits, and failed to properly cross examine witnesses. Finally, Calvetti argues that, after trial, Gerometta failed to move for a downward variance based on U.S.S.G. 5C1.2's "safety valve" provision.[3]

## STANDARD OF REVIEW

Petitioner's motion is brought pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255. To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

Defendants seeking to set aside their sentences pursuant to § 2255 have the burden of establishing their case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73, 76

---

[3]The section headings in Calvetti's petition suggest an effort to raise additional arguments, including that Gerometta failed to subpoena and call defense witnesses on her behalf, that Gerometta failed to object to Calvetti's sentence as substantively unreasonable, and that Gerometta failed to properly argue the 18 U.S.C. § 3553(a) sentencing factors. However, Calvetti does not describe these arguments in her petition, so the Court will not consider them.

(6th Cir. 2003). It is well established that when a defendant files a § 2255 motion, he or she must set forth facts establishing entitlement to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted).

## ANALYSIS

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 688 (1984) governs this Court's analysis of ineffective assistance of counsel claims. "In *Strickland*, the Supreme Court articulated a two-component test that must be satisfied for a defendant to demonstrate that a counsel's performance was so defective as to require reversal of a conviction . . . ." *Lint v. Preselnik*, 542 Fed. App'x 472, 475 (6th Cir. 2013). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To establish deficient performance, a defendant must show that "counsel's representation fell below the objective standard of reasonableness." *Lint,* 542 Fed. App'x at 475 (citing *Strickland*, 466 U.S. at 688). Judicial scrutiny of counsel's performance is highly deferential, and this Court must apply the strong presumption that counsel's representation fell within the wide range of reasonable professional conduct. *Lint,* 542 Fed. App'x at 475-76 (citing *Strickland*, 466 U.S. at 689). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, a defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citation and internal quotations

6

omitted).

To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The likelihood of a different result "must be substantial, not just conceivable." *Lint*, 542 Fed. App'x at 476 (citing *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011)).

**I. Pre-Trial Claims**

**a. Failure to Communicate**

Calvetti asserts that Germotta visited her "probably three (3) times for approximately thirty (30) minutes each visit." (ECF No. 103, PageID 1587). At all of these visits, Gerometta focused on Calvetti's knowledge of, and participation in, the drug conspiracy. (ECF No. 103, PageID 1587-1588). Gerometta informed Calvetti that "his strategy was to prove an 'illegal stop,' which would lead to the findings of 'fruit of the poisonous tree.'" (ECF No. 103, PageID 1588). Calvetti contends that, by focusing on this strategy, Gerometta failed to consider her own, true version of her initial stop, in which she was not driving under the minimum legal speed.

Nothing that Calvetti sets forth is ineffective assistance of counsel. Calvetti does not show how additional or longer visits would have changed the outcome of her case, and the record indicates that Gerometta did consider Calvetti's contention that she was driving 65 miles per hour at the time of the stop. In fact, he asked Ziecina about it during the evidentiary hearing on the second suppression motion. Evid. Hr'g, Tr. July 8, 2014, 41:7-11 (ECF No. 30, PageID 184) (Gerometta: "When you stopped Ms. Calvetti...she said, 'I was going 65, why did you stop me," or words to that effect?" Ziecina: "Yeah, she asked again why she was stopped."). Moreover,

7

Calvetti's version of events does not account for the illegal lane change, which the Court found actually justified the stop. (ECF No. 36, PageID 269) ("[T]he initial traffic stop was lawful because Trooper Ziecina had probable cause to believe that Defendants had committed a civil infraction, to wit, changing lanes without signaling."). Thus, Calvetti's argument that Gerometta's alleged failure to communicate constitutes ineffective assistance of counsel is meritless.

### b. Failure to Conduct Independent and Adequate Pre-Trial Investigation

Calvetti argues that Gerometta failed to adequately investigate the case before trial. Specifically, Calvetti asserts that Gerometta failed to investigate Ziecina's background, failed to investigate the illegal lane change by reviewing traffic cameras, and generally "relied on what the U.S. attorney told him." (ECF No. 103, PageID 1590).

Calvetti raises concerns about Ziecina's credibility because the Michigan Attorney General charged Ziecina with lying to a peace officer during a criminal investigation and willful neglect of duty for conduct that occurred after Calvetti's trial, but before her sentencing.[4] While Calvetti claims that "[h]ad Gerometta investigated the trooper's background, he likely would have found other instances of the trooper's dishonesty," (ECF No. 103, PageID 1590), she does not actually identify any instances of misconduct that Gerometta would have found. The misconduct she describes occurred after her trial. Thus, she has not shown that Gerometta's failure to investigate Ziecina prejudiced her.

Calvetti's argument that Gerometta failed to investigate traffic camera assumes, without

---

[4]During his criminal proceedings, Ziecina indicated that he would plead guilty to willful neglect of duty, but ultimately prevailed on a motion to suppress that compelled the state court to dismiss the case. *See People v. Ziecena*, No. 33782 (Mich. Ct. App., October 24, 2017) (unpublished) (available at http://publicdocs.courts.mi.gov/OPINIONS/FINAL/COA/20171024 _C337822_36_337822.OPN.PDF).

foundation, that those cameras exist. She has offered no evidence that such cameras exist. Thus, she cannot show that Gerometta's failure to investigate possible video footage of the stop harmed her.

Finally, Calvetti appears to be confusing "riding the coattails of the U.S. Attorney" with strategic decisions to capitalize on the Government's burden to prove the charges. Although she may wish that Gerometta would have done more to impeach Ziecina's testimony, she cannot dispute that he competently cross-examined the trooper at all stages of the proceedings. Thus, the record shows that Gerometta fulfilled his duty to make a reasonable investigation or to make reasonable decisions that made a particular investigation unnecessary.

      c.      **Failure to Negotiate a More Favorable Plea**

Calvetti argues that Gerometta failed to negotiate a favorable plea offer, and failed to advise her to plead guilty without a written plea offer or to take a conditional plea that would preserve her right to an appeal. This argument is contradicted by logic and the record. First, Calvetti admits that Gerometta negotiated, and communicated to her, a plea offer that would have resulted in a sentencing range of 46 to 57 months. (ECF No. 103, PageID 1589). Considering the severity of the charges that Calvetti was facing, and the evidence against her, this offer was undoubtedly favorable. Second, given Calvetti's rejection of an offer that would have roughly cut her potentional imprisonment in half, the Court finds it improbable that Calvetti would have pleaded guilty-as-charged to receive, at best, acceptance of responsibility credit and an extremely limited right to appeal. Third, Calvetti has failed to show that the Government would have agreed to a conditional plea if Gerometta would have proposed one. For these reasons, Calvetti has failed to show that she was prejudiced by Germotta's alleged deficiencies in the plea negotiation process.

9

## II. Motions to Suppress

Calvetti appears to argue that Gerometta failed to properly litigate the suppression motions. In a section titled "Suppression of Evidence - Prolonged Stop," she details the Seventh Circuit's decision in *United States v. Rodriguez-Escalera*, 884 F.3d 661 (7th Cir. 2018), where it affirmed the lower court's decision to exclude evidence because a highway trooper did not have reasonable suspicion to extend a traffic stop beyond the time necessary to issue a traffic citation. Similarly, Calvetti states that "Gerometta never argued the fact that Calvetti's signing of the DEA agent's Miranda Rights waiver form where she specifically indicated that she was not willing to answer their questions was Calvetti stating that she was not willing to answer their questions without a lawyer present." (ECF No. 103, PageID 1601).

Calvetti is merely attempting to re-litigate issues that the Court already decided and that were affirmed on appeal. These arguments were presented to, and rejected by, both this Court and the Sixth Circuit. Because the record is clear that Gerometta actually did present these issues, Calvetti cannot argue that he was constitutionally ineffective for failing to do so.

## III. Trial Claims

Calvetti alleges that Gerometta provided ineffective assistance of counsel at trial by failing to admit Ziecena's initial report and photos of her home as evidence, and for failing to properly cross-examine Ziecina and Cortez.

Calvetti's argument as to Ziecina's initial report and Gerometta's failure to cross-examine Ziecina is unpersuasive. It is not clear that the initial report would have been admissible, and the record shows that Ziecina's live testimony was vigorously cross-examined by Gerometta. Calvetti has not shown that but for this one piece of impeachment evidence or different cross-examination,

10

the outcome of her trial would have changed.

As to the pictures of her home, Calvetti apparently wanted them admitted to show that her home was not a drug house; she contends that she just lived sparsely. But, these pictures would not have explained away the drug packaging material that was found in her home. Thus, it would not have changed the outcome of the trial.

Finally, Calvetti's argument that Gerometta failed to properly cross-examine Cortez is belied by the record. Although Gerometta did not ask Cortez about the alleged lane change, he did question him about Calvetti's knowledge of the drug trafficking operation. (ECF No. 91, PageIDs 1177-1187). This strategic choice of questioning is well within the wide-range of acceptable professional conduct and does not constitute deficient performance.

For these reasons, Calvetti's arguments that Gerometta provided ineffective assistance of counsel at trial are meritless.

**IV.     Sentencing Claims**

Calvetti argues that Gerometta failed to argue that Calvetti qualified to receive a sentence reduction pursuant to U.S.S.G. 5C1.2. However, Gerometta likely decided to not raise this argument because it is meritless. U.S.S.G. 5C1.2's "safety valve" provision, which allows a court to sentence below a mandatory minimum, provides relief for defendants who "truly cooperate." *United States. v. Dottery*, 259 Fed.App'x 812, 817-818 (6th Cir. 2008). "True cooperation is not merely answering the questions the government thinks to ask, but assertively volunteering all relevant information about one's offense or related offenses." *Id*. at 818.

Here, Calvetti admittedly refused to answer the Government's questions and she denied her participation in, and knowledge of, the drug trafficking offenses throughout her case. She never

11

volunteered any relevant information. Even if Gerometta had asked for this reduction, the Court would have almost certainly denied it. Thus, Calvetti cannot show that she was prejudiced by Gerometta's failure to do so.

## V.     Certificate of Appealability

For the reasons set forth above, the Court concludes that Calvetti is not entitled to habeas relief.

A certificate of appealability must issue before a petitioner such as Calvetti may appeal the district court's denial of her § 2255 Motion. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b).

28 U.S.C. § 2253(c)(2) provides that a certificate of appealability may issue only if a petitioner makes a substantial showing of the denial of a constitutional right. As the Supreme Court has explained this standard:

> . . . the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). As the Court has stated, "[w]here a district court has rejected the constitutional claim on the merits, the showing required to satisfy 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If a certificate of appealability is issued by a district court, it must indicate which specific issue or issues satisfy the required showing. 28 U.S.C. § 2253(c)(3).

Here, Calvetti's § 2255 Motion raised several arguments. The Court concludes that reasonable jurists would not find the Court's assessment of Calvetti's claims debatable or wrong.

12

The Court shall therefore decline to issue a certificate of appealability.

## CONCLUSION & ORDER

For the reasons stated above, the Court DENIES Calvetti's § 2255 Motion.

IT IS FURTHER ORDERED that the Court DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY.

IT IS SO ORDERED.


Dated: January 23, 2019            s/Sean F. Cox  
                                                              Sean F. Cox  
                                                              U. S. District Judge


I hereby certify that on January 23, 2019, the foregoing document was served on counsel of record via electronic means and upon Sarah Ann Calvetti via First Class mail at the address below:

Sarah Ann Calvetti 30871180  
DUBLIN FEDERAL CORRECTIONAL INSTITUTION  
Inmate Mail/Parcels  
5701 8TH ST - CAMP PARKS  
DUBLIN, CA 94568

                                                                             s/J. McCoy  
                                                                             Case Manager